

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS, EX REL. DR. KELLY BALTAZAR<br><br>Plaintiffs,<br><br>v.<br><br>LILLIAN S. WARDEN, an individual, and ADVANCED HEALTHCARE ASSOCIATES, an Illinois Corporation,<br><br>Defendant. | No. 07 C 4107<br><br>Honorable Charles R. Norgle |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the Court is Dr. Lillian S. Warden ("Warden") and Advanced Healthcare Associates's ("Advanced Healthcare") (collectively, "Defendants") motion to dismiss *qui tam* plaintiff Dr. Kelly Baltazar's ("Baltazar") complaint for failure to plead fraud with particularity under Federal Rule of Civil Procedure 9(b). For the following reasons, the motion is denied.

**I.    BACKGROUND**

**A. Facts**

Baltazar was a chiropractic physician at Advanced Healthcare from February 5, 2007 until June 8, 2007. First Am. Compl. ¶ 18. In this position, she diagnosed and treated patients, and completed physician chart notes and fee slips with CPT/diagnostic codes for each patient. Id. Baltazar discovered that her supervisor, Warden, was altering Baltazar's fee slips so that they

1

reflected services or treatments that were not provided. Id. ¶ 36. In doing so, Warden either physically altered Baltazar's chart notes, or marked a different service code on Baltazar's fee slips that reflected a more expensive procedure than the one Baltazar actually provided. Id. ¶¶ 35-37, 41. This latter practice is commonly referred to as "upcoding." After making her changes, Warden allegedly gave the edited billing forms to Defendants' billing clerks who created electronic fee slips, which were submitted to Medicare, Medicaid, and private carriers for payment. Id. ¶ 34. In turn, Defendants were allegedly reimbursed for the overstated amount of money. Id. ¶¶ 34, 38.

The alleged fraud does not end there. Baltazar alleges that Defendants: provided patients with unnecessary treatment; upcoded their bills to reflect therapeutic exercises that physicians did not perform; upcoded their bills to reflect chiropractic manipulation, the most common service that Medicare covers; upcoded their bills to reflect electric stimulation that physicians did not provide; submitted bills for re-examination when, in fact, re-examination was not performed; predated doctor's notes to reflect that a medical exam took place prior to chiropractic treatment, although it had not; delayed the submission of bills; and routinely waived the collection of its patients' deductibles. Id. ¶¶ 46-75. After learning of these activities, Baltazar says that she was no longer willing to work for the company and tendered her resignation. Id. ¶¶ 21-22.

**B. Procedural History**

On July 20, 2007, Baltazar initiated this action on behalf of the United States and the State of Illinois against Advanced Healthcare and its proprietor, Warden, alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and the Illinois Insurance Claims Fraud Prevention Act ("ICFPA"), 740 ILCS 92/15(a). Both the United States and the State of Illinois

declined to intervene in this case.

On September 29, 2008, Defendants filed a motion to dismiss Baltazar's complaint, and a separate motion for summary judgment. On April 1, 2009, the Court granted summary judgment in favor of Defendants, finding that Baltazar's claims fail as a matter of law under 35 U.S.C. § 3730(e)(4)(A), the public disclosure bar. U.S. ex rel. Baltazar v. Warden, No. 07 C 4107, 2009 WL 935805, at *10 (N.D. Ill. Apr. 2, 2009). Defendants' motion to dismiss was denied as moot. On February 18, 2011, the Seventh Circuit held that this action is not barred by § 3730(e)(4)(A) for one principal reason: Baltazar's suit is based on her own knowledge rather than information disclosed in several governmental reports documenting false claims submitted to the Medicare and Medicaid programs. U.S. ex rel. Baltazar v. Warden, 635 F.3d 866, 867-69 (7th Cir. 2011). On October 20, 2011, Defendants filed the instant motion to dismiss.

## II. DISCUSSION

### A. Standard of Decision

Under Rule 9(b), a plaintiff who alleges fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In other words, Baltazar's complaint must allege "'the who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co., 631 F.3d 436, 441-42 (7th Cir. 2011) (quoting U.S. ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 854 (7th Cir. 2009)). Further, "[a]lthough a plaintiff generally receives the benefit of reasonable inferences at the motion to dismiss phase, a plaintiff who bases allegations of fraud on information and belief bears the burden of pleading plausible grounds for suspecting that the defendant was engaged in a fraudulent scheme." Id. at 447 (citation omitted). Determining

3

plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citation omitted).

**B. Defendants' Contention that the Complaint Fails to Allege Fraud with Particularity**

Defendants argue that Baltazar has not satisfied the heightened pleading standard of Rule 9(b) because she fails to identify a single false bill submitted to the federal government, the Illinois state government, or private insurer. According to Defendants, Baltazar has not established the necessary link between her conclusory allegations of fraudulent billing practices and an actual violation of either the FCA or the ICFPA. Baltazar argues that the issues raised in the instant motion have already been litigated and decided. She submits that the analyses under Rule 9(b) and the FCA's public disclosure bar are "inextricably intertwined," and therefore the Seventh Circuit ruling on the public disclosure bar in this case is a conclusive decision with respect to the sufficiency of the complaint. This argument is without merit.

Next, Baltazar argues, that under Seventh Circuit law, she is not required to plead that specific false invoices were submitted because she alleges facts which create a plausible inference that false claims were submitted. In Lusby, the Seventh Circuit held that it is not "essential for a relator to produce the invoices (and accompanying representations)" to satisfy the particularity requirement of Rule 9(b). 570 F.3d at 854. There, the relator alleged that the defendant defrauded the United States about the quality of turbine blades it provided to the government under five specific contracts. Id. at 853. The complaint included the specific parts shipped on specific dates, and details of payment. Id. at 853. Although the complaint did not include allegations regarding the defendant's specific request for payment or billing packages,

4

the court determined that the relator was able to show a false statement through a plausible inference. Id. at 854. The relator's allegations were not vague—the defendant had been told exactly what the fraud entailed. Id. at 855. The court stated, "It is enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." Id. at 854-55 (citations omitted).

Here, Baltazar's complaint describes, in detail, the allegedly fraudulent scheme. Baltazar alleges that Warden falsely altered physician fee slips by checking off boxes to designate that patients received treatments or services that were not provided. First Am. Compl. ¶ 35. Warden allegedly gave the edited billing forms to Defendants' billing clerks who created electronic fee slips, which were submitted to and paid by Medicare, Medicaid, and private carriers. Id. ¶ 34. Baltazar concedes that she "cannot at this time identify all of the false claims for payment that were caused by Defendants' conduct until such time as she can review all of the patient records, Physician SOAP notes and electronic billing slips submitted by defendants." Id. ¶ 86. Nonetheless, Baltazar specifically alleges that her own fee slips had been altered by Warden on at least two occasions—in approximately March of 2007, and on June 8, 2007. Id. ¶¶ 36-37.

Baltazar further alleges that Warden added services and treatments to Baltazar's original billing records that were never performed, and upcoded services or treatments that she had performed to reflect that a more complicated and expensive procedure had been completed. Id. ¶ 41. She attached copies of allegedly altered records as Exhibit 1 to the complaint. Baltazar also avers that on June 5-8, 2007, Defendants' billing clerk Susan Garbin told her that it was Defendants' daily practice to alter billing records by adding or upcoding procedures, treatments, and re-examinations that were not performed. Id. ¶ 45. These allegations, among others, are

sufficient to support an inference that false claims were submitted to the federal and state government and private insurers. Like the relator's allegations in Lusby, Baltazar's allegations are not vague. Defendants have received notice of the purported fraud with sufficient specificity. Baltazar has therefore satisfied the pleading requirement under Rule 9(b). See Lusby, 570 F.3d at 854-55; see also U.S. ex rel. Nehls v. Omnicare, Inc., No. 07 C 5777, 2011 WL 1059148, at *5-6 (N.D. Ill. Mar. 21, 2011) (applying Lusby and concluding that the relator's ICFPA claim was sufficient under Rule 9(b)).

Defendants also argue that Baltazar's own allegations prove that her claims are patently false. A plaintiff may plead herself out of court by "pleading facts that establish an impenetrable defense to its claims." Tamayo v. Blagojevich, 526 F.3d 1074, 1086 (7th Cir. 2008) (citing Massey v. Merrill Lynch & Co., 464 F.3d 642, 650 (7th Cir. 2006)). Pleadings consist of "the complaint, any exhibits attached thereto, and the supporting briefs." Cole v. Milwaukee Area Technical Coll. Dist., 634 F.3d 901, 903 (7th Cir. 2011) (citing Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002)).

First, Defendants challenge Baltazar's allegation that they upcoded and falsely billed CPT Code 97110 by placing an "X" in the box on the fee slip next to code 97110. Defendants point out that Baltazar's complaint states that she herself placed the "X" in the box next to code 97110. Baltazar concedes that this was a clerical error, and asserts that she will seek leave to amend this allegation through a formal motion. Nonetheless, because Baltazar has plead fraud with sufficient particularity, this superfluous allegation does not warrant dismissal of Baltazar's complaint. See U.S. ex rel. Robinson v. Northrop Corp., 824 F. Supp. 830, 832-33 (N.D.Ill. 1993) ("[C]ertain areas of the amended complaint lack exact details and, at times, contain

superfluous information. However, that alone does not overcome the fact that plaintiffs have pled fraud with particularity. It is not necessary for this court to go through the complaint, paragraph-by-paragraph, to determine what information is extraneous to plaintiffs' claim.").

Finally, Defendants challenge Baltazar's allegation that they submitted false bills under CPT Code 97110 for therapeutic exercises (billed in fifteen minutes intervals). Baltazar alleges that Warden altered physician billing slips to charge for CPT Code 97110 (or other codes) for therapeutic exercises, when the services were not rendered. First Am. Compl. ¶ 50. She further alleges that the full fifteen minutes of supervised exercise was rarely done. Id. With respect to Baltazar's allegation that "on average, 8-10 minutes of therapeutic exercise was performed with the patient," id., Defendants argue that the billing requirements were met because chiropractors are allowed to bill one unit under code 97110 if the exercises were performed anywhere from eight to twenty-three minutes. Defendants, however, fail to cite any support for this defense. Additionally, the specific allegation regarding the time intervals of supervised exercise actually performed is superfluous to Baltazar's allegations of fraud and does not justify dismissal of her complaint. See Robinson, 824 F. Supp. at 832-33.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to plead fraud with particularity under Rule 9(b) is denied.

IT IS SO ORDERED.

ENTER:

*Charles Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: December 15, 2011